UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-14230-CIV-MOORE
MAGISTRATE JUDGE P.A. WHITE

MARK ANTHONY PINA,                    :

    Petitioner,                   :

v.                                    :     <u>SUPPLEMENTAL REPORT OF</u>
                                            <u>MAGISTRATE JUDGE</u>
WALTER A. McNEIL,                     :

    Respondent.                   :
_____

### I.   <u>Introduction</u>

Mark Anthony Pina, who is presently confined at Martin Correctional Institution, has filed a <u>pro</u> <u>se</u> petition for writ of habeas corpus pursuant to 28 U.S.C. §2254, attacking his conviction and sentence in case F-03-2017, entered in the Eleventh Judicial Circuit Court for Miami-Dade County. (DE# 1).  The Undersigned previously issued a Report recommending that the petition be denied.  (DE# 25).  The District Court issued an order wherein it re-referred the matter to the Undersigned for a supplemental report consistent with the order, the details of which are discussed below. (DE# 31).

Pina was convicted of possession of a firearm after pleading guilty and was convicted of armed robbery with a firearm after a jury trial.  Pina was sentenced to life in prison. (DE# 14, p. 363-65, 407-411). He prosecuted a direct appeal from his conviction, raising the same claims raised here under ground one.  (DE# 14, p. 426-441, 524-47).  The Florida Third District Court of Appeal <u>per</u> <u>curiam</u> affirmed the conviction in a decision without written opinion. (DE# 14, p. 548).  <u>See also</u> <u>Pina v. State</u>, 971 So. 2d 124

(Fla. 3 DCA 2007). Approximately eleven months later, Pina returned to the trial court and filed a pro se motion for postconviction relief pursuant to Fla.R.Crim.P. 3.850, raising the identical grounds of ineffective assistance of trial counsel presented in this federal petition under grounds two and three. (DE# 14, p. 552-567). In a written order, the trial court summarily denied the motion. (DE# 14, p. 652-67). Pina took an appeal from the trial court's ruling, and the denial of postconviction relief was affirmed without written opinion in a per curiam affirmance. (DE# 14, p. 837). See also Pina v. State, 5 So.3d 683(Fla. 3 DCA 2009). Pina filed a petition for writ of habeas corpus in the Third DCA pursuant to Florida Rule of Appellate Procedure 9.030(b)(3) wherein he raised the same issue he raises in the present proceedings under ground four. (DE# 14, p. 892-09). On May 15, 2009, the Third DCA issued an order denying Pina's petition for writ of habeas corpus. (DE# 14, p. 910).

On July 9, 2009, Pina came to this Court, filing the instant pro se petition for writ of habeas corpus pursuant to 28 U.S.C. §2254, and memorandum of law in support thereof. (DE# 1, 3). In his initial motion, Pina raised the following grounds for relief:

1. The trial court erred when it failed to follow the mandatory procedure for competence to stand trial and by not holding a competency hearing on the morning of trial.

2. His trial counsel was ineffective in failing to object to the re-examination of defendant without court order or notice to defense counsel.

3. His trial counsel was ineffective in failing to object to the trial court's failure to hold a competency hearing.

4. His appellate counsel was ineffective on direct appeal when he failed to argue that the trial court

erred in failing to determine whether he was
competent to stand trial.

(DE# 1, 3).  The state filed a response and supporting appendix.
(DE# 13, 14).  Pina filed a reply to the state's response.  (DE#
17).

On October 20, 2009, Pina filed a second motion for
postconviction relief pursuant to 3.850 in state court.  Pina
argued that he possessed newly discovered evidence which
established that his constitutional rights had been violated during
his first trial. Specifically, the state knowingly used perjured
testimony during the competency hearing, thereby committing a
Giglio violation, which is established by showing "(1) that the
testimony was false; (2) that the prosecutor knew the testimony was
false; and (3) that the statement was material."    Ventura v.
State, 794 So. 2d 553 (Fla. 2001). (DE# 22, p. 9).

Pina next filed a motion to stay proceedings in this Court
where he argued that he was "presently litigating in state court a
motion for post conviction relief pursuant to Rule 3.850 of the
Florida Rules of Criminal Procedure, raising various claims of
newly discovered evidence, not contained in his petition with this
court." (DE# 20).  Pina further explained that "[i]n the event
that such relief is denied in state court, [Pina] will supplement
his petition filed in [federal] court with those new grounds."
(DE# 20).  Pina argued that the claims raised in his second
postconviction motion are based on newly discovered evidence which
"is intricately intertwined with the claims raised in Mr. Pina's
habeas petition supporting his claims for relief, as well as,
supporting the fact that Dr. Jacobson committed perjury while
testifying at the Petitioner's competency hearing and trial."
According to Pina, the state court has not ruled on his second Rule

3

3.850 motion.  (DE# 28, p. 4).

This Court issued an order denying the motion to stay without prejudice and explaining, "The Court will revisit the issue at the time the entire file is reviewed for disposition." (DE# 21).  Pina filed a motion for reconsideration (DE# 22), which this court denied (DE# 23).

The Undersigned issued a 6/30/10 Report recommending that the petition be denied because all four claims lacked merit.  (DE# 25).  Pina filed objections to the report wherein he argued that he wants to raise the claim contained in his 10/20/09 Rule 3.850 motion as a fifth claim in his federal habeas petition, namely, that he was deprived of a fair trial because the state committed a <u>Giglio</u> violation with Dr. Jacobson's testimony.  (DE# 28).  In response, the District Court issued an order wherein it stated:

> This matter was referred to the Honorable Patrick A. White, United States Magistrate Judge, who issued a Report recommending that the Petition be denied. On November 9, 2009, Petitioner filed a Motion to Stay Proceedings, which the Magistrate Judge denied, stating the issue would be "revisit[ed]" when the case was reviewed for disposition. However, the Report and Recommendation does not address the issues raised in the Motion to Stay, including the existence of a fifth, as yet unexhausted, claim pending in state court based on alleged "newly discovered evidence." At this time the Court will not address the merits of the four claims discussed in the June 30, 2010 Report and Recommendation, the additional unexhausted claim, or the value of the alleged new evidence. Rather, the Court believes it is appropriate for the magistrate judge to consider the merits of the Motion to Stay and the new evidence presented therein in the first instance, including whether they have any bearing on the adjudication of the initial four claims in the petition. Thus, it is ORDERED AND ADJUDGED that the Court DECLINES TO ADOPT Magistrate Judge White's Report and Recommendation.  This matter is RE-REFERRED to Magistrate Judge White for a further Report and Recommendation consistent with this Order.

(DE# 31).

## II.  <u>Motion for Stay</u>

Pina filed a motion, requesting this Court to stay the instant habeas corpus proceeding, because he was in the process of exhausting a fifth issue in state court, and requesting that this Court allow him to then amend his petition to include the newly exhausted claim, if appropriate.

A stay and abeyance is available in limited circumstances, only if (1) the petitioner had "good cause" for failing to exhaust the claims in state court, (2) the unexhausted claims are "potentially meritorious," and (3) "there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." <u>Rhines v. Weber</u>, 544 U.S. 269 (2005) <u>Id</u>. at 277-78.  In this case, Pina arguably had good cause for failing to exhaust his claim, as he first learned of Dr. Jacobson's alleged perjury in a letter dated October 5, 2009; shortly thereafter, he filed his postconviction motion in state court on October 20, 2009.  In addition, the record contains no indication that Pina intentionally engaged in dilatory litigation tactics.  However, Pina has failed to show that his unexhausted claim is potentially meritorious.

The following facts regarding the state court proceedings are relevant when resolving whether his fifth claim is potentially meritorious.  The state trial court conducted a competency hearing on March 10 and 19, 2004 during which three experts testified regarding Pina's competency to stand trial, specifically, Dr. Sanford Jacobson, Dr. Leonard Haber, and Dr. Sonia Ruiz.  (DE# 14, p. 8-80).  Pursuant to court order, Dr. Jacobson examined Pina on two occasions at the Miami-Dade County Jail, February 2 and 13, 2004.  (DE# 14, p. 13-14).  During the first visit, the corrections officers refused to remove Pina from his cell and bring him to a

private interview room, accordingly, Jacobson could not conduct an adequate evaluation. (DE# 14, p. 14). At the end of the visit, Jacobson could not reach a definitive decision as to Pina's competency, but believed that he was likely competent. (DE# 14, p. 14). When questioned by Pina's trial counsel, Jacobson explained that he returned for a second visit not in response to a second court order but because he "was advised by the Mental Health Administrator's office to see [Pina] again." (DE# 14, p. 19). Jacobson testified that he did not know "who they spoke to but . . . it was [his] understanding that the Court wanted [him] to, if possible, follow-up on [his] earlier evaluation." (DE# 14, p. 19).

During the February 13, 2004 visit, Jacobson met with Pina in a private interview room. (DE# 14, p. 19). After interviewing Pina, Jacobson believed that the defendant was attempting to simulate mental illness and/or incompetence. (DE# 14, p. 24). Pina was "essentially refus[ing] to participate meaningfully in answering questions aimed at assessing his competency." (DE# 14, p. 25). When asked by defense counsel whether he was able to conclude within a reasonable degree of psychiatric certainty whether Pina would be able to communicate adequately with his attorney and understand the requirements of law, Jacobson responded, "I think he could if he chose to. I think his behavior is volitional." (DE# 14, p. 27).

Dr. Haber testified that he too conducted a competency evaluation with Pina pursuant to court order on January 14, 2004. Haber examined Pina in an interview room at the Miami-Dade County Jail. (DE# 14, p. 48). Haber provided the following opinion: "I concluded that the defendant with certain qualifications was competent to proceed to trial. Although he stated that he did not remember anything that he was charged with, I did not accept that

6

as a fully credible response." (DE# 14, p. 54).

Dr. Ruiz examined Pina on January 14, 2004 in an interview room at the jail. (DE# 14, p. 59). She testified to her conclusion that Pina was not competent because "his capacity to consult with counsel in a reasonable manner was . . . questionable" due to his "mood and tendency to become explosive, emotional, and loud." (DE# 14, p. 67). However, she testified that she "thought he knew what his charges were" and "had a reasonable understanding of what he was facing." (DE# 14, p. 67).

At the close of the March 19, 2004 hearing, the court concluded that Pina was competent to stand trial. (DE# 14, p. 74). The court explained that it reached this conclusion after reviewing the reports and testimony of the three doctors and based on Pina's behavior in his dealings with the court. (DE# 14, p. 74). The court noted that Pina "engaged vigorously in plea negotiations with the state . . . until it became clear that the state was not offering him a plea, at which time his tact changed and he pursued the competency route." (DE# 14, p. 75). The court also noted that Pina had filed several pro se motions to have his attorney fired and to have the judge disqualified. (p. 76).

The trust of Pina's argument is that his due process rights have been violated, because his conviction is based upon false or perjured testimony from Dr. Jacobson. In his 10/20/09 postconviction motion filed in state court Pina explained:

> On 10/05/09 Dr. Sanford Jacobson provided Mr. Pina with a letter and psychological reports that the Defendant had requested. In this letter, Dr. Jacobson explains the purpose of each examination and by who they had requested. It is clear by the contents and disclosure in this letter by Dr. Sanford Jacobson that he had been court ordered to examine Mr. Pina for competency on February 2, after said examination Dr.

Jacobson authored his report dated February 3, and filed it with the court pursuant to Fla.R.Crim.P. 3.210 and 3.211, were he determined Mr. Pina should be placed in either a forensic facility or a local facility for further assessment of competency.   Dr. Jacobson conducted a second examination a week later which was for competency as well, Dr. Jacobson in his letter states the examination he had done and the report he had authored dated February 15, 2004 had been requested by the State Attorney Office.   It is clear by the letter Dr. Sanford Jacobson sent to Mr. Pina that Mr. Pina's competency determination was infected with perjured testimony as well as his testimony at trial.   This information was not available to the Defendant, defense counsel, nor the court at the time of trial; could not have been ascertained through the exercise of due diligence, and had it been available at the time of the competency hearing and trial, probably would have produced a different result, the newly discovered evidence submitted, requires reversal of Mr. Pina's convictions.

(DE# 22, p. 8-9).   Pina cites the following portion of Dr. Jacobson's testimony during the pendency hearing as constituting perjury,

> **Defense Counsel**: Okay, did either of the parties, the Defense or the state, contact you and request that you go back about and make a second assessment?
> **Dr. Jacobson**: I think I was advised by the Mental Health Administration Office to see him again.  So I cannot tell you who they spoke to but I think that - it was my understanding that the court wanted me to, if possible, follow up on my earlier.

Pina argued that he was deprived of a fair trial because the state knowingly used perjured testimony, thereby committing a Giglio violation, which is established by showing "(1) that the testimony was false; (2) that the prosecutor knew the testimony was false; and (3) that the statement was material."   Ventura v. State, 794 So. 2d 553 (Fla. 2001). (DE# 22, p. 9).   Pina asserted that "the three prongs established by . . . Giglio are easily met. Dr. Jacobson falsely testified that it had been the Mental Health Administration Office who had requested the re-examination of Mr. Pina when in fact it had been the State Attorney's Office who had asked Dr. Jacobson to revisit the defendant and submit a second

8

report finding Mr. Pina competent to proceed." (DE# 22, p. 12).

A defendant is denied due process when a state knowingly uses perjured testimony at trial or allows untrue testimony to go uncorrected. Giglio v. United States, 405 U.S. 150, 153 (1972); Napue v. Illinois, 360 U.S. 264, 269 (1959). As Pina explained, a Giglio violation is established by showing "(1) that the testimony was false; (2) that the prosecutor knew the testimony was false; and (3) that the statement was material." Ventura v. State, 794 So. 2d 553 (Fla. 2001).

Pina's claim is wholly conclusory with no substantiation in the record except for his own self-serving allegations.[1] There is no evidence whatever of perjured testimony.  When Dr. Jacobson testified, he seemed unsure of who prompted the phone call he received asking whether he had made a competency determination during his first visit to the jail and, if not, whether he would return for a second visit.  He believed it was the Mental Health Administrator's office, however, he also testified that "it was [his] understanding that the court wanted [him] to, if possible, follow-up on [his] earlier evaluation." (DE# 14, p. 19).  The fact that, years later, he wrote in a letter to Pina that he returned for a visit in response to a call from the State Attorney's office does not render his earlier testimony to be perjured.   More importantly, this aspect of Dr. Jacobson's testimony was not material to the court's competency determination.   The court

---

[1] Absent supporting evidence in the record, a court cannot consider a habeas petitioner's mere assertions on a critical issue in his pro se petition to be of probative value. See Tejada v. Dugger, 941 F.2d 1551, 1559 (11 Cir. 1991)(recognizing that a petitioner is not entitled to habeas relief "when his claims are merely 'conclusory allegations unsupported by specifics' or 'contentions that in the face of the record are wholly incredible'" (citation omitted)). See also Ross v. Estelle, 694 F.2d 1008, 1011-12 (5 Cir. 1983).

explained that it reached this conclusion after reviewing the reports and testimony of the three doctors and based on Pina's behavior in his dealings with the court. (DE# 14, p. 74). The court noted that Pina "engaged vigorously in plea negotiations with the state . . . until it became clear that the state was not offering him a plea, at which time his tact changed and he pursued the competency route." (DE# 14, p. 75). The court also noted that Pina was competent enough to file several pro se motions to have his attorney fired and to have the judge disqualified. (DE# 14, p. 76).

Since the record does not support Pina's claim of perjury or prosecutorial misconduct, in that Pina has failed to demonstrate that the prosecutor knowingly presented false testimony which was material, Pina has not been denied constitutional due process. See Giglio v. United States, 405 U.S. at 153; Napue v. Illinois, 360 U.S. at 269. By extension, a stay and abeyance to exhaust this claim in state court is not appropriate because the unexhausted claim is not potentially meritorious. See Rhines v. Weber, 544 U.S. 269 (2005).

### III.   Statute of Limitations

Even if Pina exhausted the fifth claim in state court, granting a motion for leave to amend his original petition to add this claim would not be appropriate as the claim is time-barred under federal law.   Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a petitioner must generally file his §2254 petition within one year from the date that his conviction became final by the conclusion of direct review or the expiration of the time for seeking such review. See 28 U.S.C. §2244(d)(1)(A);[2]

---

[2]     The statute provides that the limitations period shall run from the latest of —

Jimenez v. Quarterman, ___ U.S. ___, ___, 129 S.Ct. 681, 685-86, 172 L.Ed.2d 475 (2009)(explaining the rules for calculating the one-year period under §2244(d)(1)(A)). This period is tolled while a properly filed application for State post-conviction relief or other collateral review with respect to the pertinent judgment or claim is pending.[3] 28 U.S.C. §2244(d)(2). Moreover, the one-year limitations period is also subject to equitable tolling in rare and exceptional cases. Lawrence v. Florida, 549 U.S. 327, 336, 127 S.Ct. 1079, 1085, 166 L.Ed.2d 924 (2007)(holding that for equitable tolling to apply, a petitioner has the burden of proving: "(1) that he ha[d] been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing."). See also Helton v. Secretary  for Dept. of Corrections, 259 F.3d 1310, 1312 (11 Cir. 2001)(stating that "[e]quitable tolling can be applied to prevent the application of the AEDPA's statutory deadline when 'extraordinary circumstances' have worked to prevent an otherwise diligent petitioner from timely filing his

---

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action  in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. §2244(d)(1).

[3]     A properly-filed application is defined as one whose "delivery and acceptance are in compliance with the applicable laws and rules governing filings," which generally govern such matters as the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee. Artuz v. Bennett, 531 U.S. 4 (2000)(overruling Weekley v. Moore, 204 F.3d 1083 (11 Cir. 2000)).

petition."), cert. denied, 535 U.S. 1080 (2002); Sandvik v. United
States, 177 F.3d 1269, 1271 (11 Cir. 1999).

Here, the Third DCA affirmed the judgment of conviction and
sentence on direct appeal in Pina v. State, 971 So. 2d 124 (Fla. 3
DCA October 31, 2007). Pina's conviction and sentence became final
on January 29, 2008, ninety days after the Florida Third District
Court of Appeal affirmed his convictions and sentences on direct
appeal. See Chavers v. Secretary, Florida Dept. of Corrections, 468
F.3d 1273, 1275 (11 Cir. 2006), citing, Bond v. Moore, 309 F.3d 770
(11 Cir. 2002). The original federal petition for writ of habeas
corpus challenging the instant convictions was filed July 5, 2009,
well-beyond one-year after the date on which the convictions and
sentences became final, however, the original petition was not
time-barred pursuant to 28 U.S.C. §2244(d)(1)(A) because the
limitations period was extended by properly filed applications for
state post-conviction or other collateral review proceedings. 28
U.S.C. §2244(d)(2). Specifically, 266 days after the conviction
became final, i.e., on January 29, 2008, Pina filed an October 22,
2008 motion for postconviction relief under Fla.R.Crim.P. 3.850.
The trial court denied the motion and the Third DCA affirmed in
Pina v. State, 5 So.3d 683(Fla. 3 DCA February 18, 2009), and
issued its mandate on April 8, 2009. The time to file a federal
habeas petition was tolled from October 22, 2008 until April 8,
2009. See 28 U.S.C. §2244(d)(2). Twenty-five days later, Pina
filed a May 4, 2009 petition for writ of habeas corpus in the Third
DCA wherein he alleged ineffective assistance of appellate counsel
on direct appeal. The Third DCA denied the petition on May 15,
2009 and issued its mandate on June 11, 2009. The time to file a
federal habeas petition was also tolled while the state habeas
proceedings were pending in the Third DCA, namely, from May 4, 2009
through June 11, 2009. See 28 U.S.C. §2244(d)(2). On June 11,

2009, there remained 74 days within which to file his federal habeas petition, specifically, on or before August 24, 2009. Pina's original petition was timely filed on July 7, 2009.

Pina first raised his fifth issued on November 6, 2009, in his motion to stay. In order for this claim to be deemed timely, Pina must demonstrate that he is entitled to proceed under one of §2244(d)'s statutory tolling provisions, see §2244(d)(1)(B)-(D), or is entitled to equitable tolling of the limitations period. Pina is apparently asserting, albeit implicitly, that he should be excused from the late-filing and entitled to statutory tolling pursuant to 28 U.S.C. §2244(d)(1)(D) on the basis that he could not discover the factual predicate of his claim until after the one-year limitation period had already expired.

In rare instances, the limitation period may run from a date later than the date on which the judgment became final, see 28 U.S.C. §2244(d)(1)(B)-(D). These include the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence. 28 U.S.C. §2244(d)(1)(D). To warrant application of section 2244(d)(1)(D), Petitioner must persuade this Court that he exercised due diligence in his search for the factual predicate of his claim(s). The Eleventh Circuit has held that an application that "merely alleges that the applicant did not actually know the facts underlying ... his claim" is insufficient to show due diligence. In re Boshears, 110 F.3d 1538, 1540 (11 Cir. 1997). The inquiry is "whether a reasonable investigation ... would have uncovered the facts the applicant alleges are 'newly discovered.'" Id. (citation omitted).

In this case, Pina asserts that he first learned of Dr. Jacobson's perjured testimony when Dr. Jacobson sent him a letter

dated October 3, 2009 wherein he admitted that the State Attorney's Office directed him to conduct the second competency evaluation. Pina fails to show that he could not have obtained this information earlier through due diligence.  The doctor provided Pina with the information in response to a 7/3/09 letter written by Pina which requested all documents relating to Jacobson's evaluation of Pina. Pina and his lawyer could easily have requested this information within the one-year limitations period.  In light of the foregoing, the application of section 2244(d)(1)(D) is not warranted and Pina's fifth claim is time-barred.

IV.  <u>Conclusion</u>

Based upon the foregoing, it is recommended that (1) Pina's motion for stay (DE# 22) be denied with prejudice and (2) Pina's petition for writ of habeas corpus (DE# 1) be denied.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

SIGNED this 17th day of September, 2010.

UNITED STATES MAGISTRATE JUDGE

cc:  Mark Anthony Pina
     DC #426905
     Martin Correctional Institution
     1150 S.W. Allapattah Road
     Indiantown, FL 33128

     Richard L. Polin
     Lunar Claire Alvey
     Attorney General Office
     Department of Legal Affairs
     444 Brickell Avenue
     Suite 650
     Miami, FL 33131